IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUTHIE NELSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 08 C 2905 |
| ADVOCATE BETHANY HOSPITAL AND ADVOCATE HEALTH & HOSPITAL CORPORATION, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ruthie Nelson filed this action against Advocate Bethany Hospital and Advocate Health & Hospital Corporation (Advocate) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Nelson, who was employed by Advocate as a nurse in its Continuity of Care Department, alleges that her supervisor, Audrey Young-Lee, discriminated against her on the basis of her skin color. Advocate has moved for summary judgment, and for the reasons stated below, the Court grants the motion.

### Facts

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 556 F.3d 1099, 1104 (7th Cir. 2009). The Court takes the following facts from the plaintiff's complaint and from the parties' statements of facts as to which there is no material dispute.

Advocate Bethany Hospital (Bethany) is a Long Term Acute Care Hospital that provides care for patients with complex medical conditions requiring a long hospital stay. On November 13, 2006, Nelson began working at Bethany as a Case Manager in the Continuity of Care Department (COCD).

*Organization of the COCD*

At the time Nelson was hired, the COCD had a total of four employees: three case managers and one social worker. The case managers were Audrey Young-Lane (who was also the head of the department and Nelson's supervisor), Pamela Smith, and Nelson. Brenda Bragg was and continues to be the social worker for the COCD and the entire Bethany facility. All four COCD employees are African-American women.

The COCD is responsible for monitoring patients from admission to discharge, including insuring that patients are properly admitted to and retained at Bethany. The COCD also arranges for post-hospital care for patients upon discharge.

COCD case managers have several job responsibilities, including working with physicians, nurses and social workers to ensure quality patient care; planning for and assisting with timely discharge of patients; reviewing patient admissions and the files of current patients to ensure they are eligible for the kind of services Bethany provides; interacting with external review agencies to assure compliance with regulations affecting financial reimbursement to the hospital; consulting with and educating patients, families, and staff; and participating in multi-disciplinary team meetings. The social worker is responsible for providing social services to patients, providing discharge planning, assessing the need for social services, reporting known or suspected patient abuse to the appropriate protection agencies, and documenting and reporting her work

with patients.

To initially determine a patient's eligibility for Bethany's services, a case manager conducts a pre-admission review comparing the doctor's initial assessment of the patient to the criteria for eligibility laid out in InterQual, a book that establishes the standards for determining whether a patient qualifies for admission to a long term acute care hospital. If the patient is admitted, the case manager thereafter conducts concurrent/continued stay reviews, using InterQual criteria, every seven days. As the patient approaches the anticipated end of his or her stay, these concurrent/continued stay reviews become more frequent, so that the patient can be discharged as soon as possible. Each case manager in the COCD, including Nelson, was trained in the pre-admission and patient review procedures. Because Pamela Smith was particularly proficient in pre-admission reviews, she was assigned to perform most pre-admission duties.

At the time Nelson was hired, Young-Lane allocated patient assignments to the various COCD case managers based on building units or floors. In or around June 2007, Bethany administrators asked Young-Lane to change how she assigned patients to case managers, requesting that she do so on a "product line" basis (i.e., based on the insurance carrier of a particular patient) instead of on a unit or floor basis. Young-Lane did so, and as a result the caseloads for Nelson and the other case managers changed. Shortly after this reorganization, Advocate changed the job title for all case managers in COCD to "Utilization Review Nurse." In or around November 2007, Young-Lane again adjusted COCD case assignments. The June and the November changes resulted in changed responsibilities for all members of the COCD.

*Nelson's performance reviews*

Advocate conducts ninety-day reviews of newly hired employees. Employees receive one of four ratings: exceeds expectations, meets expectations, approaching expectations, or does not meet expectations. Nelson's ninety-day performance review was completed by Young-Lane on February 12, 2007. Young-Lane gave Nelson a rating of "meets expectations" but noted that Nelson required more time to master the pre-admission process, had difficulty adapting to change and multiple or shifting priorities, and occasionally failed to foster trust and respect within the team. Young-Lane scheduled a follow-up evaluation for thirty days later based on these concerns. Nelson, pursuant to an Advocate process, filed a rebuttal of her ninety-day performance evaluation, contesting Young-Lane's observations. At the thirty-day follow-up review, Nelson again received a rating of "meets expectations."

In the fall of 2007, Advocate's corporate offices conducted an audit of Bethany and identified several concurrent/continued stay reviews that did not meet InterQual criteria. Around the same time, Advocate Health Partners, one of the commercial insurance carriers that worked with Bethany, complained that several of its patients' concurrent/continued stay reviews were untimely or improper. Young-Lane, after investigating, believed that Nelson had performed all the reviews at issue. Also in the fall of 2007, two doctors and one family of a patient complained to Young-Lane about Nelson's performance.

In December 2007, Young-Lane completed Nelson's annual performance evaluation and gave Nelson a rating of "does not meet expectations." The review identified several problems with Nelson's performance, including timeliness of reviews

4

and difficulty adjusting to the changes within the COCD. Nelson filed a rebuttal of the evaluation. She contended that she had not been provided with documentation of which specific reviews she had improperly or untimely completed, or which particular doctors, families, or insurance companies had complained about her performance. In February 2008, Menai Edwards, Bethany's manager of human resources, met with Nelson regarding her rebuttal and then met with Nelson and Young-Lane together to discuss the contents of the evaluation. Edwards noted that Nelson should be given credit for participation in several "extracurricular" activities within the hospital, and Nelson's rating was upgraded to "approaching expectations."

*Developments after first medical leave*

During this period, Nelson began receiving psychological treatment to cope with stress and emotional issues she believes were brought on by the stress of her work environment and the negative performance reviews. On February 25, 2008, Nelson requested and was granted medical leave to continue that treatment. Nelson returned to work at Bethany on May 27, 2008.

Pursuant to Advocate's policies, Young-Lane had not given Nelson further evaluation or feedback on her performance while she was on medical leave. On June 3, 2008, after Nelson returned from leave, Young-Lane and Edwards met with Nelson and presented her with the revised annual evaluation reflecting the new rating of "approaching expectations." They also gave her a Performance Deficiency Notice (PDN), based on the performance issues Nelson had demonstrated before going on leave.

According to Advocate policy, the purpose of a PDN is, among other things, to

5

"communicate to the associate that the current level of performance does not meet expectations by identifying the specific position accountabilities or behavioral expectations, which are not being met" and to "identify potential actions the associate may pursue to enhance performance . . . . [and] consequences for failing to meet the performance expectations identified in the Notice within the specified time frame identified in the Notice." Def.'s Mot. for Summ. Judg., Ex. 7 at 5.

The PDN noted that Nelson's reviews were not timely, insurance carriers were not receiving information they requested from her about patients, she did not consistently document her concurrent/continued stay reviews consistent with InterQual criteria, and she did not properly assess patients for purposes of discharge planning. Nelson filed a rebuttal of her revised annual performance evaluation, restating the arguments she had raised in rebuttal of the original annual performance evaluation. Nelson also stated that she believed she was being retaliated against for filing a rebuttal to her ninety-day performance review. At no time in this or any rebuttal Nelson filed did she indicate that she believed that she was being discriminated against on the basis of her skin color or any other factor prohibited under Title VII.

On June 26, 2008, Young-Lane met with Nelson and a third party (there at the request of Nelson, who had requested a mediator) to give Nelson feedback on her performance. Young-Lane told Nelson that her reviews still failed to adhere to COCD guidelines and InterQual criteria and said that some reviews had not been completed at all. Young-Lane met with Nelson several times throughout the summer of 2008 to follow up on this meeting and give Nelson further feedback about the quality of her reviews. At a meeting in October, Young-Lane told Nelson that her reviews were still

6

not meeting criteria, and as a result Young-Lane extended the term of the PDN. Soon after the October meeting, Nelson requested and was granted medical leave. She returned to Bethany on November 4, 2008. At Nelson's request and per her physician's instructions, she did not return to COCD but instead was assigned to work in the Nursing Administration Manager's office, where she received the same pay and benefits she had received as a Utilization Review Nurse. Nelson was terminated on December 23, 2008. That termination is not a part of this lawsuit.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**1.   Race discrimination**

Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Nelson can prevail on her Title VII claim in one of two ways. She can meet

7

her burden of proof by offering direct proof of discriminatory intent (the "direct method" of proof) or through the *McDonnell Douglas* burden-shifting approach (the "indirect method" of proof). *See, e.g., Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). Nelson has not chosen to pursue the direct method path and has instead relied on the indirect, burden-shifting method of proof.

Under the indirect method of proof, a plaintiff can establish a *prima facie* case of race discrimination by showing that she was a member of a protected class; she was meeting her employer's performance expectations; she suffered an adverse employment action; and the employer treated similarly situated persons not in the protected class more favorably. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973); *see also, e.g., Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009). At the summary judgment stage, of course, the plaintiff's burden is to show that there is a genuine issue of fact on these points.

If the employee establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993) (internal citation omitted). If the defendant meets this burden of production, the plaintiff must prove by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also, e.g., Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006).

Under the *McDonnell Douglas* burden-shifting approach, the third element of the *prima facie* case is a showing of a materially adverse employment action. To be actionable, "adverse actions must be materially adverse . . . meaning more than a 'mere inconvenience or alteration of job responsibilities.'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). A materially adverse action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* at 612-13 (citation omitted). An employee's unhappiness with her employer's conduct or decision is insufficient, without more, to support a claim under Title VII. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

Nelson makes several vague allegations of adverse employment actions that she suffered as a result of the alleged color discrimination. None of these rise to the level of actionable adverse actions under Title VII. Nelson alleges she received a demotion, an increased workload, negative performance evaluations, and unfairly harsh criticism from her supervisor, and that she was denied raises.

A demotion evidenced by a decrease in wage or salary would constitute an actionable adverse action. *Oest,* 240 F.3d at 612-613. The evidence presented reflects that Nelson was not demoted and did not receive a decrease in wage or salary. With the exception of the last month and a half of her employment at Advocate, when she was reassigned at her own request, Nelson was always employed in the same role

9

in the COCD. Nelson's title did change at one point from "Case Manager" to "Utilization Review Nurse," but Advocate offers undisputed evidence that this change in title applied to all case managers within the COCD and was the result of a departmental reorganization, not a change of job function. Def.'s LR 56.1 Stat. ¶ 31. Further, a title change that does not result in a reduction of wages or less significant responsibilities is not an actionable adverse employment action. *See Tart v. Ill. Power Co.,* 366 F.3d 461, 474 (7th Cir. 2004).

Nelson also alleges that she was given so many social work responsibilities that she was effectively "demoted" to social worker. It is clear from the case manager job description, however, that Nelson and other case managers were expected to participate in social work activities. A mere increase in those activities in the face of department-wide changes does not amount to a demotion.

Nelson further contends that after the reorganization of the COCD, she was given an unfairly increased workload. Advocate counters that all employees in the COCD received an increased workload as the number of patients in the hospital increased. Though it is possible to imagine a scenario in which an employer piles work onto an employee in an effort to punish her or to set her up to fail, the evidence does not suggest that is what was going on here. Though Nelson did complain repeatedly about being overwhelmed by the workload, the evidence shows that all employees were given additional responsibilities, and there is no evidence that Nelson was singled out or given a disproportionate share of the work. And even if Nelson had been given additional responsibilities not given to others, imposition of additional responsibilities, without more, does not rise to the level of adverse employment action. *See Haugerud*

*v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir. 2001).

Neither do Nelson's allegations about her negative performance evaluations rise to the level of actionable adverse employment action. Reprimands, criticism, and negative employment reviews with no accompanying disciplinary action, demotion, or loss of pay do not constitute "materially adverse action" under Title VII. *See Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 466 (7th Cir. 2002); *see also Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (declining to broaden definition of adverse employment action to include unfair reprimands); *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 686 (7th Cir. 2008) (documentation of unauthorized absences in employee's file not adverse action).

Nelson also alleges that she was subject to additional and harsher reviews and supervision than other COCD employees and that Young-Lane repeatedly criticized her. Assuming this is true, there is no evidence that Nelson was disciplined, demoted, or docked pay as a result of these inspections. Inconveniences and difficult behavior by supervisors, without more, do not amount to actionable adverse employment action. *Traylor v. Brown,* 295 F.3d 783, 788 (7th Cir. 2002).

Nelson finally alleges that she was denied a raise and the opportunity to apply for promotions as a result of the negative reviews. She does not offer any evidence, however, to support these contentions. Without some evidence beyond Nelson's bare assertion, no reasonable jury could find that she experienced an adverse employment action along these lines.

Nelson received a performance deficiency notice as a result of her negative evaluations. There is no indication, however, that she was denied any pay, privileges,

or promotions as a result of the PDN. Under the circumstances, no reasonable jury could find the PDN to constitute actionable adverse action. (Though Nelson was eventually terminated from Bethany, her termination is beyond the scope of this lawsuit and was unrelated to the PDN.)

**2.    Retaliation claim**

Liberally read, Nelson's original complaint also raised a claim that Advocate retaliated against her for filing rebuttals to her performance evaluations. Advocate addressed the possible retaliation claim in its motion for summary judgment. Nelson failed to respond to Advocate's arguments in her response. It is not the function of the Court to "scour the record in search of evidence to defeat a motion for summary judgment; [the Court] relies on the nonmoving party to identify with reasonable particularity the evidence upon which [she] relies." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). Nelson has forfeited her claim by failing to address Advocate's arguments.

**3.    Hostile work environment claim**

Though Nelson did not raise a claim for hostile work environment in her original complaint, she attempts to raise one in her filings and memoranda in opposition to Advocate's motion for summary judgment. The summary judgment stage is "too late in the day to be adding new claims." *Austin v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997). Nelson has offered no basis to add this claim at the current stage of the case.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary

12

judgment [docket nos. 42, 46]. The Court directs the Clerk to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 23, 2009